**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LABORERS' PENSION FUND and<br>LABORERS' WELFARE FUND OF THE<br>HEALTH AND WELFARE DEPARTMENT<br>OF THE CONSTRUCTION AND GENERAL<br>LABORERS' DISTRICT COUNCIL OF<br>CHICAGO AND VICINITY, THE CHICAGO<br>LABORERS' DISTRICT COUNCIL RETIREE<br>HEALTH AND WELFARE FUND, and<br>CATHERINE WENSKUS, Administrator of the<br>Funds,<br><br>                        Plaintiffs,<br><br>    v.<br><br>BUTTERFIELD HEALTH CARE LABOR,<br>LLC, an Illinois corporation, and<br>CHRISTOPHER VANGEL, individually<br>                        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Case No. 18 C 7302 |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of Chicago and

Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund and Catherine

Wenskus, Administrator of the Funds, (collectively "Funds") by their attorneys, Patrick T.

Wallace, Amy Carollo, Ryan Liska, and Kate Mosenson, for their Complaint against Defendant

Butterfield Health Care Labor, LLC, an Illinois corporation and Christopher Vangel, individually

state:

### COUNT I

#### (Failure To Pay Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Butterfield Health Care Labor, LLC (hereinafter the "Company") is an Illinois corporation.  The Company does business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement").  At all times relevant herein, the employees of the Company performed work covered by the same Agreement. (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in paragraph 13 below, is attached hereto as Exhibit A.)

7.      The Company entered into an Installment Note ("Note") with the Funds on or about January 10, 2018.  A true and accurate copy of the Note is attached hereto as Exhibit B.

8.      Defendant Christopher Vangel, (hereinafter "Vangel") is and at all times relevant was the Manager of the Company and signed a Guaranty of Payment and Indemnification ("Guaranty") on or about January 10, 2018 individually guaranteeing payment of the amounts due under the Note to the Funds.  A true and accurate copy of the Guaranty is attached hereto as Exhibit C.

9.      Paragraph 7 of the Note provides that

Payments made pursuant to this Installment Note shall be considered "contributions" as defined under the terms of the CBA and the Fund's respective Agreements and Declarations of Trust.  If the contributions are not paid by the 10th day following the date on which the payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Fund's respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages.  Further, in the event the Company fails to timely make any payments described in this Note.  All amounts described in Paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's

3

under the terms of this Note. In such event the Company further agrees to pay all attorney fees and costs incurred by the Funds in any action to enforce any part or all of this Note.

10. Paragraph 8 of the Note states

This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no[t] limited to, its obligations to submit timely contribution and dues reports and to make timely contributions and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

11. Paragraph 1 of the Guaranty provides that

The undersigned guarantees, absolutely and unconditionally: (a) the payment when due of the entire principal indebtedness and all interest evidenced by the Note during the twenty-four (24) month payment period including interest and liquidated damages for the late or unpaid payments due on the note: and (b) the full and complete payment of any and all fees and costs incurred pursuant to default under terms of the Note, whether litigation is involved or not, . . . The Guarantor also agrees to be personally liable for all monthly benefit contributions and/or union dues owed from the Company to the Funds, the District Council and all ancillary funds that are due at the time the Note and Guaranty are entered into and/or are incurred and become due and owing for the duration of the Note, including all interest, liquidated damages, audit costs, attorneys' fees and costs.

12. Paragraph 13 of the Guaranty provides that

The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement [sic] against Guarantor, after service of notice of the claimed default, in favor of the Funds for such amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees.

4

13.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the CARCO Industry Advancement Fund ("CARCO"), and the Illinois Small Pavers' Association ("ISPA") to act as an agent in the collection of contributions due to those Funds.

14.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the Training Fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

15.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

16.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

5

17. An audit of the Company's books and records for the time period of April 1, 2016 through June 30, 2018 revealed that the Company performed covered work during the audit period, but that notwithstanding the obligations imposed by the Agreement, and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a) failed to report and pay contributions in the amount of $6,850.88 owed to Plaintiff Laborers' Pension Fund for the audit period of April 1, 2016 through June 30, 2018, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b) failed to report and pay contributions in the amount of $5,702.67 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of April 1, 2016 through June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c) failed to report and pay contributions in the amount of $2,505.50 owed to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for the period of April 1, 2016 through June 30, 2018, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(d) failed to report and pay contributions in the amount of $282.00 owed to Laborers' Training Fund for the period of April 1, 2016 through June 30, 2018, thereby depriving the Laborers' Training Fund of contributions, income and

6

information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $95.88 owed to Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC") for the audit period of April 1, 2016 through June 30, 2018, thereby depriving the LDCLMCC of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $45.12 owed to Chicago Area Independent Construction Association ("CAICA") for the audit period of April 1, 2016 through June 30, 2018, thereby depriving the CAICA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(g)     failed to report and pay contributions in the amount of $39.48 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of April 1, 2016 through June 30, 2018, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

A true and accurate copy of the audit and audit summary sheet are attached hereto as Exhibits D and E respectively.

18.     Under the terms of the Agreement, the Funds' respective Agreements and Declarations of Trust, the Note and Guarantee, the Company and Mr. Vangel owe liquidated damages plus interest on all unpaid contributions revealed by the audit for the period of April 1, 2016 through June 30, 2018.

19. Under the terms of the Agreement, the Funds' respective Agreements and Declarations of Trust, federal common law, the Note and Guarantee, the Company and Mr. Vangel are liable for the costs of any audit which reveals unpaid contributions. Accordingly, the Company and Mr. Vangel owe the Funds $1,987.50 in audit costs for the audit for the period of April 1, 2016 through June 30, 2018. *See* Exhibit E.

20. The Company's and Mr. Vangel's actions in failing to submit payment upon the audit to which it submitted its books and records violates Section 515 of ERISA, 29 U.S.C. §1145.

21. Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement and the Funds' respective Trust Agreements, federal common law, the Note, and Guarantee, the Company and Mr. Vangel are liable to the Funds for unpaid contributions, as well as interest, and liquidated damages on the unpaid contributions, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Butterfield Health Care Labor, LLC and Christopher Vangel, joint and severally:

a. entering judgment in sum certain in favor of the Funds and against Defendants on the amounts due and owing pursuant to the audit for the period of April 1, 2014 through June 30, 2017, including contributions, interest, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Pay Union Dues Revealed as Delinquent Pursuant to an Audit)

22.     Plaintiffs reallege paragraphs 1 through 21 of Count I as though fully set forth herein.

23.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

24.     Notwithstanding the obligations imposed by the Agreement, the Company performed covered work during the audit period of April 1, 2016 through June 30, 2018, and the Company and Mr. Vangel failed to withhold and/or submit payment of $865.04 in union dues that were or should have been withheld from the wages of employees for the period of April 1, 2016 through June 30, 2018, thereby depriving the Union of information and income. *See* Exhibits D and E.

25.     Pursuant to the Agreement, Note and Guarantee, the Company and Mr. Vangel owe liquidated damages on all late or unpaid dues as revealed by the audit for the period of April 1, 2016 through June 30, 2018, plus audit costs, interest, accumulated liquidated damages, and reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment, joint and severally, against Defendants Butterfield Health Care Labor, LLC and Christopher Vangel:

a.      entering judgment in sum certain in favor of the Funds and against the Company on the amounts due and owing pursuant to the audit for the period of April 1, 2016 through June

9

30, 2018, including dues, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

      b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Default on Installment Note)

26.      Plaintiffs reallege paragraphs 1 through 25 as though fully set forth herein.

27.      The Note and Guarantee require the Company and Mr. Vangel to stay current on the Company's obligations to the Funds and District Council under the terms of the collective bargaining agreement. If the Company and Mr. Vangel fail to do so, the Funds have the right to accelerate and collect all amounts owed under the Installment Note and Guaranty. *See* Exhibits B and C.

28.      The Company and Mr. Vangel failed to pay amounts owed on the audit for the period of April 1, 2014 through June 30, 2107.

29.      Pursuant to 28 U.S.C. § 1367, and the terms of the Note and Guaranty, Company and Mr. Vangel are liable to the Funds for the full accelerated amount of the Note, which includes:

      a.      the remaining balance of $32,041.03 on the Note (the spreadsheet detailing the amounts owed on the Note is attached as Exhibit F); and

      b.      attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendants Butterfield Health Care Labor LLC and Christopher Vangel, joint and severally:

10

a. entering judgment in sum certain against Vangel and the Company on the amounts due and owing on the defaulted Note and Guaranty, plus interest and liquidated damages, and the attorneys' fees and costs incurred by the Funds; and

b. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

November 1, 2018                                        Laborers' Pension Fund, et al.

                                                       By: /s/ Amy Carollo

Patrick T. Wallace
Amy Carollo
Ryan Liska
Kate Mosenson
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

# CONSTRUCTION & GENERAL LABORERS'
## DISTRICT COUNCIL OF CHICAGO AND VICINITY
AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8209 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between ____BUTTERFIELD HEALTH CARE LABOR, LLC____ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** In response to the Union's request for recognition as the majority or Section 9(a) representative of the unit employees, the Union recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA, as amended, for the employees now and hereinafter employed under the terms of this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union's having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association without written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement, and all extensions hereof, and it waives any right it may have to terminate this agreement based upon the number of persons employed.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other Employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $1.90 per hour effective June 1, 2013; $2.00 per hour effective June 1, 2014; $2.05 per hour effective June 1, 2015; and $2.10 per hour effective June 1, 2016, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2013, the minimum wage rate shall be $37.00 per hour

4. **Checkoff Deductions and Remittances.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be liable for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the 10th day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the local amount to be transmitted to the LPL, to be calculated at the Illinois Department of Revenue or other applicable standard.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all firms of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union in enforcing the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at a job site.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be duly bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2013 (unless dated differently below) through May 31, 2017, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile signatures on this Agreement as if they were the original signatures.

Dated: ___June 4___, 20 15    Employer: ___BUTTERFIELD HEALTH CARE LABOR, LLC___

ACCEPTED:                                              FEIN No.: ~~_____~~

Laborers' Local Union No.: ___ONE___                 By: ___Dorothy Vargel___

By: ___Frank Donato___                                   ___(Print Name and Title)___

CONSTRUCTION AND GENERAL LABORERS'                    ___(Signature)___
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: ___James P. Connolly, Business Manager___        ___640 N. RIVER, SUITE 106___
                                                         ___(Address)___

By: ___Charles LoVerde, Secretary-Treasurer___        ___NAPERVILLE, IL  60563___
                                                         ___(City, State and Zip Code)___

For Office Use Only:  CAICA*                            ~~4503~~
                                                         ___(Telephone/Telefax)___

                                                         ___@ ATT.NET___
                                                         ___(Email Address)___

RECEIVED JUN 09 2015 LABORERS' DISTRICT COUNCIL

EXHIBIT A

**INSTALLMENT NOTE**

This Installment Note ("Note") is made between the Laborers' Pension Fund ("Pension Fund"), the Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and the Retiree Health and Welfare Fund ("Welfare Funds" or collectively the "Funds"), the parties of the first part, and Butterfield Health Care Labor (the "Company"), the parties of the second part.

WHEREAS, the Company has at all relevant times been party to a collective bargaining agreement ("CBA") with the Construction and General Laborers' District Council of Chicago and Vicinity, whereunder it is obligated to make certain contributions to the above-named Funds, as well as to the Training Fund, on behalf of its covered employees, and to submit payment of all employee union dues;

WHEREAS, the Company has failed to timely pay certain contributions owed to the Funds for the reports covering the period of May through October 2017.

WHEREAS, the Company has failed to remit all employee union dues to the Funds, as the designated collection agent for the Construction and General Laborers' District Council of Chicago and Vicinity, for the reports covering the period of May through October 2017.

WHEREAS, the Company desires to pay all delinquencies owed to the Funds, to pay all union dues owed to the Construction and General Laborers' District Council of Chicago and Vicinity, together with liquidated damages, and interest, as set forth below and further desires to remain current in its obligation to pay contributions to the Funds.

THE PARTIES HEREBY AGREE as follows:

1. The Company will pay $23,842.09 to the Health and Welfare Fund (comprised of $16,679.57 in delinquent contributions, $5,096.88 in liquidated damages and $2,065.64 in interest) (based on an interest rate of 12%). The Company will pay $10,417.72 to the Retiree Health and Welfare Fund (comprised of $7,304.25 in delinquent contributions, $2,210.76 in liquidated damages and $902.71 in interest). The Company will also pay $28,463.68 to the Pension Fund (comprised of $19,963.39 in delinquent contributions, $6,034.21 in liquidated damages and $2,466.08 in interest). All of these amounts shall be paid according to the schedule described below in paragraphs 3 and 4.

2. The Company will also pay $991.20 to the Training Fund (comprised of $826.00 in delinquent contributions and $165.20 in liquidated damages), $127.20 to the LECET Fund (comprised of $115.64 in delinquent contributions and $11.56 in liquidated damages), $305.40 to the LDCMC Fund (comprised of $277.64 in delinquent contributions and $27.76 in liquidated damages), $145.38 to the CAICA Fund (comprised of $132.16 in delinquent contributions and $13.22 in liquidated damages) and $3,346.73 in union dues (comprised of $2,532.89 in delinquent contributions and $253.29 in liquidated damages). These delinquent amounts shall be paid in their entirety at the time the Note is signed along with the amounts due in paragraph 5. *PENALTY OF $60.55 INCLUDED FOR DELINQUENT UNION DUES.*

3. Simultaneously with the execution of this Note, the Company will pay twenty percent (20%) of the total outstanding indebtedness, excluding note interest and the delinquent amounts described above in paragraph 2, or $4,355.29 to the Health and Welfare Fund, $1,903.00 to the Retiree Health and Welfare Fund and $5,199.52 to the Pension Fund.

4. For twenty-four (24) consecutive months commencing on February 1, 2018 and ending on January 1, 2020, the Company will pay $811.95 per month to the Health and Welfare Fund, $354.78 to the Retiree Health and Welfare Fund and $969.34 per month to the Pension Fund.

5. The Company will remit all payments to the Funds' Administrative Offices, which are located at 11465 Cermak Road, Westchester, Illinois 60154.

6. The Company understands and agrees that this Installment Note is based on reports submitted by the Company to the Funds and that the Funds reserve the right to conduct an audit, in accordance with the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, to determine benefit contribution compliance for the time period covered herein and further reserve the right to collect any unpaid contributions, union dues, interest, liquidated damages, and audit costs as shown on said audit.



EXHIBIT
B

7. Payments made pursuant to this Installment Note shall become due on the 10th and all other Fund's respective contributions as defined under the terms of 10th day following the date on which payment should have been received. If the contributions are not paid by the 10th day following the date on which payment should have been received, the contribution shall be considered delinquent and all charges which apply to the late payment of contributions under the terms of the CBA and the Funds' respective agreements and Declarations of Trust shall apply, including, but not limited to, the assessment of interest and liquidated damages. Further, in the event the Company fails to timely make any payments described in this Note. All amounts described in paragraph 1 herein shall immediately become due on the 10th day following the date on which payment should have been received by the Fund's under the terms of this Note. In such event the Company further agrees to pay all attorneys' fees and costs incurred by the Funds in any action to enforce any part of this Note.

8. This Installment Note is conditioned on the Company staying current on its obligations to the Funds and District Council under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust. In the event that the Company fails to maintain its obligations under the terms of the collective bargaining agreement and the Funds' respective Agreements and Declarations of Trust, including, but no limited to, its obligations to submit timely contribution and dues reports and to make timely contribution and dues payments by the tenth day following the month in which laborers' work was performed, then the Funds shall have the right to accelerate and collect all amounts due under this Installment Note, plus payment of all attorneys' fees and costs incurred by the Funds in any action to accelerate this Installment Note.

9. The Parties acknowledge and agree that any payments to the Union provided for in this Agreement fully comport with 29 U.S.C. § 186(c)(2) and that they involve the compromise, adjustment, settlement or release of a claim, complaint, grievance or dispute in the absence of fraud or duress.

10. The Company further agrees to obtain and maintain a surety bond to insure the payment of wages and benefit contributions as required under the terms of the CBA.

11. The Company shall have the right to prepay the entire amount due under the Note prior to the date upon which payment is due without penalty and without payment of any precalculated Note interest that has not accrued as of the date full payment has been made.

The Parties hereby agree to these terms by their execution hereof on the ___10___ day of the ___JAN___, 2019.

2018

Butterfield Health Care Labor

By: _____

Title: ___MANAGER_____

Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity and Retiree Health and Welfare Fund.

By: _____

principal, to the Guarantor against a maker or obligor, to an accommodation party against the party accommodated, or to a holder or transferee against a maker, and which the guarantor may have or hereafter acquire against the Company in connection with or as a result of Guarantor's execution, delivery and/or performance of this Guaranty or the Note. The Guarantor agrees that he or she shall not have or assert any such rights against the Company or its successors and assigns or any other party (including any surety), either directly or as an attempted set off to any action commenced against the Guarantor by the Company (as borrower or in any other capacity) or any other person.

5. <u>Independent Obligations.</u> The Funds may enforce this Guaranty without first resorting to or without first having recourse to the Note; provided, however, that nothing herein contained shall preclude the Funds from suing on the Note or from exercising any other rights; and the Funds shall note be required to institute or prosecute proceedings to recover any deficiency as a condition of any payment hereunder or enforcement hereof.

6. <u>Acceleration.</u> In the event that payments due under the Note shall be accelerated, the Guarantor's obligations hereunder shall also be accelerated without further notice from the Funds.

7. <u>Effect of Bankruptcy.</u> This Guaranty shall continue in full force and effect notwithstanding the institution by or against the Company of bankruptcy, reorganization, readjustment, receivership or insolvency proceedings of any nature, or the disaffirmance of the Note in any such proceedings, or others.

8. <u>Termination.</u> This Guaranty shall remain in full force and effect as to the Guarantor until all of the Companys' Obligations under the Note outstanding shall be finally and irrevocably paid in full. Payment of all of the Company's Obligations from time to time shall not operate as a discontinuance of this Guaranty. If after receipt of any payment of all or any part of the Company's Obligations, the Funds are for any reason compelled to surrender such payment to any person or entity, because such payment is determined to be void or voidable as a preference, impermissible set off, or a diversion of trust fund, or for any reason, this Guaranty shall continue in full force notwithstanding any contract action which may have been taken by the Funds in reliance upon such payment, and any such contrary action so taken shall be without prejudice to the Funds' rights under this Guaranty and shall be deemed to have been conditioned upon such payment having become final and irrevocable.

9. <u>The Company's Financial Condition.</u> The guarantor assumes full responsibility for keeping fully informed of the Company's financial condition and all other circumstances affecting the Company's ability to perform its Obligations, and agree that the Funds will have no duty to report to Guarantor any information which the Funds receive about the Company's financial condition or any circumstances bearing on its ability to perform.

10. <u>Expenses.</u> The undersigned agrees to pay and reimburse the Funds for all cost and attorney's fees, which they may expend or incur in the enforcement of this Guaranty or any of the Company's Obligations under the Note.

11. <u>Delay, Cumulative Remedies.</u> No delay or failure by the Funds to exercise any right to remedy against the Company or Guarantor will be construed as a waiver of that right or remedy. All remedies of the Funds against the Company and the Guarantor are cumulative.

12. <u>Binding Effect.</u> This guaranty shall incur to the benefit of and may be enforced by the Funds, and shall be binding upon and enforceable against the Guarantor and Guarantor's heirs, legal representatives, successors and assigns. In the event of the death of the Guarantor, the obligations of such deceased Guarantor shall continue in full force and effect against his estate, personal representatives, successors and assigns. Without limiting the generality of the foregoing, the Funds (or their successors and assigns) may from time to time and without notice to undersigned, assign any and all of their rights under this Guaranty without in any way affecting or diminishing the obligations of the undersigned hereunder, who shall continue to remain bound by the obligated to perform under and with respect to this Guaranty as though there had been no such assignment.

13. <u>Default.</u> The Guarantor hereby authorizes irrevocably any attorney of any court of record to appear for him/her in such court, at any time after ten (10) days notice after default in any payment due under this Guaranty, and confess judgement against Guarantor, after service of notice of the claimed default, in favor of the Funds for such



amount to be unpaid and owed thereon, including interest, liquidated damages and reasonable cost of collection including reasonable attorneys' fees. The Guarantor agrees to waive and release all errors which may intervene in any such proceedings, and consent to immediate execution upon such judgement, hereby ratify and confirming all that said attorney may do by virtue hereof.

14. <u>Warranties.</u> Guarantor makes to the Funds the following representations and warranties:

(a) <u>Authorization.</u> Guarantor has full right, power and authorization to enter into this Guaranty and carry out his obligations hereunder

(b) <u>No Conflict.</u> The execution, delivery and performance by Guarantor of this Guaranty will not violate or be in conflict with, results in a breach of, or constitute a default under, any indenture, agreement or any other instrument to which Guarantor is a party or by which Guarantor or any of his assets or properties is bound, or any order, writ, injunction or decree of any court or governmental institute.

(c) <u>Litigation.</u> There are no actions, suits or proceedings pending, or to the knowledge of Guarantor, threatened against or adversely affecting any Guarantor at law of in equity or before or by governmental agency or instrumentality that involve any of the transactions herein contemplated, or the possibility of any judgment or liability that may result in any material and adverse change in the financial condition of any Guarantor. Guarantor is not in default with respect to any judgment, order, writ, injunction, decree, rule or regulation of any court.

(d) <u>Enforceability.</u> This guaranty is a legal, valid and binding obligation of Guarantor, enforceable in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency or similar laws affecting the rights of creditors generally.

15. <u>Notices.</u> All notices or other communications required or permitted hereunder shall be deemed to be given when either (I) delivered in person, (II) three (3) days after deposit in a regularly maintained receptacle of the United States mail as registered or Certified mail, postage prepaid, (III) when received if sent by private courier service, or (IV) on the day on which Guarantor refuses delivery by mail or by private courier service, and (b) addressed as follows:

In Case of Guarantor

<u>CHRISTOPHER VANGEL</u>
<u>BUTTERFIELD HEALTHCARE LABOR</u>
<u>648 N. RIVER RD.</u>
<u>NAPERVILLE, ILLINOIS 60563</u>

In Case of the Funds:

Jerrod Olszewski
Laborers Pension & Welfare Fund
111 W Jackson Blvd, Suite 1415
Chicago IL 60604-3868

or such other addresses as may from time to time be designated by the party to be addressed by notice to the other in the manner hereinabove provided. The Funds will use their best efforts to send courtesy copies of notices provided hereunder to Guarantor's attorney, _____. But the failure by the Funds to send courtesy copies to Guarantor's attorney shall not limit or restrict the Funds' rights under this Guaranty in any manner nor relieve Guarantor of any obligations under this guaranty.

16. <u>Additional Waivers.</u> Guarantor expressly and unconditionally waives, in connection with any suit, action or proceeding brought by the Funds on this Guaranty, any and every right he or she may have to (I) injunctive relief, (II) a trial by jury, (III) interpose any counterclaim therein and (IV) seek to have the same consolidated with any other or separate suit, action or proceeding.

17. <u>Severability.</u> If all or any portion of any provision of this Guaranty is declared or found by a court of competent jurisdiction to be unenforceable or null and void, such provision or portion thereof shall be deemed stricken

3

and severed from this Guaranty and the remaining provisions and portions hereof shall continue in full force and effect.

18. <u>Applicable Law; Venue.</u> This Guaranty and the transactions evidenced hereby shall be construed and interpreted under the laws of the State of Illinois. Guarantor, in order to induce the Funds to accept this Guaranty and inter into the loan agreement, and for other good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, agrees that all actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Guaranty shall be litigated, at the Fund's sole discretion and election, only in courts having a situs within the county of Cook, State of Illinois, Eastern Division. Guarantor hereby waives any right he or she may have to transfer or change the venue of any litigation brought against him by the Funds on this agreement in accordance with this paragraph.

19. <u>Time is of the Essence.</u> Time is of the essence of this Guaranty as to the performance of the undersigned.

20. <u>Death of a Guarantor.</u> In the event of the death of Guarantor, the Funds shall have the right to accelerate the indebtedness evidenced by the Note unless, within sixty (60) days of his death, Guarantor's estate assumes his obligations hereunder by an instrument satisfactory to the Funds and delivers to the Funds security for performance of such obligations satisfactory to the Funds.

IN WITNESS WHEREOF, the undersigned Guarantor has executed this instrument as of the date and year first above written.

CHRISTOPHER VANGEL
Print name

Signature

Social Security Number

Date: _____

APPROVED AS TO FORM AND SUBSTANCE
ON BEHALF OF GUARANTOR;

_____

Dated: _____

4



**BANSLEY AND KIENER, L.L.P.**
CERTIFIED PUBLIC ACCOUNTANTS

O'HARE PLAZA
8745 WEST HIGGINS ROAD
SUITE 200
CHICAGO, ILLINOIS 60631

TEL: (312) 263-2700
FAX: (312) 263-6935
WWW.BK-CPA.COM

August 23, 2018

Board of Trustees
Pension and Welfare Funds of Construction and General
    Laborers' District Council of Chicago and Vicinity
11465 Cermak Rd.
Westchester, IL 60154

We have applied certain procedures, as discussed below, to the payroll records of Butterfield Health Care Labor, LLC, a contributing employer to the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, for the period April 1, 2016 to June 30, 2018. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreement in effect and with the Trust Agreement of the Fund. The propriety of the contributions is the responsibility of the employer's management.

Our procedures generally include a review of the pertinent provisions of the collective bargaining agreements and comparing underlying employer payroll records to Fund contribution records. The employer records we review may include payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, and general disbursement records. The scope of this engagement is limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Fund. Any compensation paid to employees not disclosed to us or made part of the written record is not determinable by us and is not included in our review. Any findings are not based upon observations of employees doing actual work.

Our procedures relate to a review of the employer's payroll records only and do not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

The exceptions to employer contributions are noted on the accompanying report.



EXHIBIT
**D**

-2-

The findings of this report should not be construed as an endorsement or ratification of any of the company's contribution practices. The finding is based solely on those documents that the employer provided to the auditors. This firm has not been retained to provide, and does not provide, any interpretation or advice concerning any terms of the collective bargaining agreement between the company and the Union or the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the company's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

This report is not a determination of withdrawal liability owed under the Multi-Employer Pension Plan Amendments Act, 29 U.S.C. Section 1101, et al.

*Bansley and Kiener, L.L.P.*

BANSLEY and KIENER, L.L.P.
Certified Public Accountants

# Laborers' District Council
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 5-31 2016 | 5-31 2017 | 5-31 2018 | 5-31 2019 | Total Due |
|---|---|---|---|---|---|
| Hours Not Reported | 1.00 | 128.00 | 435.00 | 0.00 | 564.00 |
| Hours - Men Not Reported | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Wages Not Reported | 0.00 | 5,145.60 | 17,922.00 | 0.00 | 23,067.60 |
| **Dollar Amount Due** | | | | | |
| Welfare | 9.98 | 1,277.44 | 4,415.25 | 0.00 | 5,702.67 |
| Retiree Welfare | 4.00 | 544.00 | 1,957.50 | 0.00 | 2,505.50 |
| Pension | 10.72 | 1,480.96 | 5,359.20 | 0.00 | 6,850.88 |
| Training | 0.50 | 64.00 | 217.50 | 0.00 | 282.00 |
| CAICA | 0.08 | 10.24 | 34.80 | 0.00 | 45.12 |
| LECET | 0.07 | 8.96 | 30.45 | 0.00 | 39.48 |
| LDCLMCC | 0.17 | 21.76 | 73.95 | 0.00 | 95.88 |
| Working Dues | 0.00 | 192.96 | 672.08 | 0.00 | 865.04 |
| **Total** | 25.52 | 3,600.32 | 12,760.73 | 0.00 | 16,386.57 |

| | |
|---|---|
| Plus previous liquidated damages assessed by Laborers' Pension and Welfare Funds | 0.00 |
| Plus previous underpayments incurred to Laborers' District Council Funds | 0.00 |
| Plus previous liquidated damages assessed by Laborers' District Council Funds | 0.00 |
| Audit Fee | 1,987.50 |
| **Total Amount Due** | **18,374.07** |

| | | | |
|---|---|---|---|
| Employer Name - | BUTTERFIELD HEALTH CARE | Person Contacted - | RICHARD CZERNIAK |
| Employer - | 35526 | Date of Contact - | JULY 11, 2018 |
| Date of Audit - | AUGUST 9, 2018 | Telephone - | 630-809-1241 |
| Audit Period - | APRIL 1, 2016 - JUNE 30, 2018 | Auditor - | NICHOLAS SADOFSKY |

3

# Laborers' District Council
## Reconciliation Between Actual and Reported Hours

| SS# | Name | | 2015 Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | 2016 Mar | Apr | May | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | MURILLO, TEODORO | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 0.00 | 1.00 |
| | | Total | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1.00 | 0.00 | 1.00 |

| | Rate | 2015 Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | 2016 Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $9.98 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.98 | 0.00 | 9.98 |
| Retiree Welfare | $4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4.00 | 0.00 | 4.00 |
| Pension | $10.72 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.72 | 0.00 | 10.72 |
| Training | $0.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 0.00 | 0.50 |
| CAICA | $0.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.08 | 0.00 | 0.08 |
| LECET | $0.07 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.07 | 0.00 | 0.07 |
| LDCLMCC | $0.17 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.17 | 0.00 | 0.17 |
| Working Dues | 3.75% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 25.52 | 0.00 | 25.52 |

| | |
|---|---|
| Employer Name - | BUTTERFIELD HEALTH CARE |
| Employer - | 35526 |
| Date of Audit - | AUGUST 9, 2018 |
| Audit Period - | APRIL 1, 2016 - JUNE 30, 2018 |
| Person Contacted - | RICHARD CZERNIAK |
| Date of Contact - | JULY 11, 2018 |
| Telephone - | 630-809-1241 |
| Auditor - | NICHOLAS SADOFSKY |

4

# Laborers' District Council

## Reconciliation Between Actual and Reported Gross Wages

| | | | | | 2015 | | | | | | | 2016 | | | Total |
| SS# | Name | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Wages |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | MURILLO, TEODORO | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Total | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

Rate - 3.75% of gross wages

| Dues | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

| | |
| --- | --- |
| Employer Name - | BUTTERFIELD HEALTH CARE |
| Employer - | 35526 |
| Date of Audit - | AUGUST 9, 2018 |
| Audit Period - | APRIL 1, 2016 - JUNE 30, 2018 |
| Person Contacted - | RICHARD CZERNIAK |
| Date of Contact - | JULY 11, 2018 |
| Telephone - | 630-809-1241 |
| Auditor - | NICHOLAS SADOFSKY |

5

# Laborers' District Council
### Reconciliation Between Actual and Reported Hours

| SS# | Name | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | 2016 | | | | | | 2017 | | | | |
| | DURMISHI, EDUART | | 0.00 | 0.00 | 0.00 | 0.00 | 88.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 88.00 |
| | LOPEZ, FEDERICO | | 0.00 | 0.00 | 40.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 40.00 |
| | | Total | 0.00 | 0.00 | 40.00 | 0.00 | 88.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 128.00 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $9.98 | 0.00 | 0.00 | 399.20 | 0.00 | 878.24 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,277.44 |
| Retiree Welfare | $4.25 | 0.00 | 0.00 | 170.00 | 0.00 | 374.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 544.00 |
| Pension | $11.57 | 0.00 | 0.00 | 462.80 | 0.00 | 1,018.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,480.96 |
| Training | $0.50 | 0.00 | 0.00 | 20.00 | 0.00 | 44.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 64.00 |
| CAICA | $0.08 | 0.00 | 0.00 | 3.20 | 0.00 | 7.04 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 10.24 |
| LECET | $0.07 | 0.00 | 0.00 | 2.80 | 0.00 | 6.16 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 8.96 |
| LDCLMCC | $0.17 | 0.00 | 0.00 | 6.80 | 0.00 | 14.96 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 21.76 |
| Working Dues | 3.75% | 0.00 | 0.00 | 60.30 | 0.00 | 132.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 192.96 |
| Total | | 0.00 | 0.00 | 1,125.10 | 0.00 | 2,475.22 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,600.32 |

| | | | |
|---|---|---|---|
| Employer Name - | BUTTERFIELD HEALTH CARE | Person Contacted - | RICHARD CZERNIAK |
| Employer - | 35526 | Date of Contact - | JULY 11, 2018 |
| Date of Audit - | AUGUST 9, 2018 | Telephone - | 630-809-1241 |
| Audit Period - | APRIL 1, 2016 - JUNE 30, 2018 | Auditor - | NICHOLAS SADOFSKY |

6

# Laborers' District Council

## Reconciliation Between Actual and Reported Gross Wages

| SS# | Name | 2016 | | | | | | | 2017 | | | | | Total Wages |
|-----|------|------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------|
| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | DURMISHI, EDUART | 0.00 | 0.00 | 0.00 | 0.00 | 3,537.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,537.60 |
| | LOPEZ, FEDERICO | 0.00 | 0.00 | 1,608.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,608.00 |
| | Total | 0.00 | 0.00 | 1,608.00 | 0.00 | 3,537.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,145.60 |

Rate - 3.75% of gross wages

| Dues | 0.00 | 0.00 | 60.30 | 0.00 | 132.66 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 192.96 |

---

Employer Name - BUTTERFIELD HEALTH CARE

Employer - 35526

Date of Audit - AUGUST 9, 2018

Audit Period - APRIL 1, 2016 - JUNE 30, 2018

Person Contacted - RICHARD CZERNIAK

Date of Contact - JULY 11, 2018

Telephone - 630-809-1241

Auditor - NICHOLAS SADOFSKY

7

# Laborers' District Council
## Reconciliation Between Actual and Reported Hours

| SS# | Name | Rate | 2017 | | | | | | | 2018 | | | | | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | ANDERSON, WALLACE | | 0.00 | 0.00 | 155.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 155.00 |
| | DURMISHI, EDUART | | 0.00 | 0.00 | 120.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 120.00 |
| | SIKO, GEJSI | | 0.00 | 0.00 | 160.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 160.00 |
| | | Total | 0.00 | 0.00 | 435.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 435.00 |

| | Rate | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare | $10.15 | 0.00 | 0.00 | 4,415.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,415.25 |
| Retiree Welfare | $4.50 | 0.00 | 0.00 | 1,957.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,957.50 |
| Pension | $12.32 | 0.00 | 0.00 | 5,359.20 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 5,359.20 |
| Training | $0.50 | 0.00 | 0.00 | 217.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 217.50 |
| CAICA | $0.08 | 0.00 | 0.00 | 34.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 34.80 |
| LECET | $0.07 | 0.00 | 0.00 | 30.45 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 30.45 |
| LDCLMCC | $0.17 | 0.00 | 0.00 | 73.95 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 73.95 |
| Working Dues | 3.75% | 0.00 | 0.00 | 672.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 672.08 |
| Total | | 0.00 | 0.00 | 12,760.73 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,760.73 |

Employer Name - BUTTERFIELD HEALTH CARE

Employer - 35526

Date of Audit - AUGUST 9, 2018

Audit Period - APRIL 1, 2016 - JUNE 30, 2018

Person Contacted - RICHARD CZERNIAK

Date of Contact - JULY 11, 2018

Telephone - 630-809-1241

Auditor - NICHOLAS SADOFSKY

8

# Laborers' District Council

## Reconciliation Between Actual and Reported Gross Wages

| SS# | Name | 2017 | | | | | | | 2018 | | | | | Total Wages |
|-----|------|------|-----|-----------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------------|
| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | |
| | ANDERSON, WALLACE | 0.00 | 0.00 | 6,386.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,386.00 |
| | DURMISHI, EDUART | 0.00 | 0.00 | 4,944.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,944.00 |
| | SIKO, GEJSI | 0.00 | 0.00 | 6,592.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,592.00 |
| | Total | 0.00 | 0.00 | 17,922.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 17,922.00 |

Rate - 3.75% of gross wages

| | | | | | | | | | | | | | | |
|-----|------|------|-----|-----------|-----|-----|-----|-----|-----|-----|-----|-----|-----|-------------|
| Dues | | 0.00 | 0.00 | 672.08 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 672.08 |

Employer Name - BUTTERFIELD HEALTH CARE

Employer - 35526

Date of Audit - AUGUST 9, 2018

Audit Period - APRIL 1, 2016 - JUNE 30, 2018

Person Contacted - RICHARD CZERNIAK

Date of Contact - JULY 11, 2018

Telephone - 630-809-1241

Auditor - NICHOLAS SADOFSKY

10/18/18

# LABORERS' PENSION & WELFARE FUNDS

## SUMMARY OF AMOUNTS OWED

AUDIT

EMPLOYER    BUTTERFIELD HEALTH CARE LABOR, LLC    CODE  35526

4-1-16 - 6-30-18

| PERIOD | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCLMCC | RATE | CAICA | RATE | LECET | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4-1-16 - 5-31-16 | 1.00 | 9.98 | 9.98 | 4.00 | 4.00 | 10.72 | 10.72 | 0.50 | 0.50 | - | 0.17 | 0.17 | 0.08 | 0.08 | 0.07 | 0.07 | 25.52 |
| 6-1-16 - 5-31-17 | 128.00 | 1,277.44 | 9.98 | 544.00 | 4.25 | 1,480.96 | 11.57 | 64.00 | 0.50 | 192.96 | 21.76 | 0.17 | 10.24 | 0.08 | 8.96 | 0.07 | 3,600.32 |
| 6-1-17 - 5-31-18 | 435.00 | 4,415.25 | 10.15 | 1,957.50 | 4.50 | 5,359.20 | 12.32 | 217.50 | 0.50 | 672.08 | 73.95 | 0.17 | 34.80 | 0.08 | 30.45 | 0.07 | 12,760.73 |
| SUBTOTAL | 564.00 | 5,702.67 | | 2,505.50 | | 6,850.88 | | 282.00 | | 865.04 | 95.88 | | 45.12 | | 39.43 | | 16,386.57 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | 104.55 |
| 20% LIQUIDATED DAMAGES | | 1,140.53 | | 501.10 | | 1,370.18 | | 56.40 | | 86.50 | 9.59 | | 4.51 | | 3.95 | | 3,068.21 |
| AUDIT COSTS | | 675.75 | | 655.88 | | 655.87 | | | | | | | | | | | 1,987.50 |
| ATTORNEY FEES | | - | | - | | - | | | | | | | | | | | - |
| ACCUM. LIQUIDATED DAMAGES | | | | | | | | | | | | | | | | | - |
| ACCUM. INTEREST | | 800.27 | | 349.50 | | 954.85 | | 39.67 | | 13.49 | | 6.35 | | 5.55 | | 2,169.68 |
| TOTAL DUE | | 8,319.22 | | 4,011.98 | | 9,831.75 | | 378.07 | | 951.54 | 118.96 | | 55.98 | | 48.98 | | 23,716.51 |

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.



EXHIBIT E

# PAYMENT PLAN WORKSHEET

10/12/2018

COMPANY _BUTTERFIELD HEALTH CARE LABOR_

PHONE# _331-472-4508_          CONTACT PERSON          CODE _35505_

NUMBER OF PMTS. _24_          FIELD REP _MC_

PMT PLAN COVERS THE MOS. OF _MAY-JUNE-JULY-SEPTEMBER 2017_

TOTAL WELL & PEN _57,269.06_

LESS 20% DOWN _11,467.81_

EQUALS AMT FIN. _45,801.25_

PLUS ATTY. COSTS          _-_

PLUS AUDIT COSTS          _-_

PLUS NOTE INT. _5,454.43_          TOTAL _2,136.07_

TOTAL W & P _51,285.68_          TOTAL W & P _51,285.68_

| | WEL PMT | 811.95 |
| | WEL RET PMT | 354.78 |
| | PENS PMT | 969.34 |
| | TOTAL | 2,136.07 |
| | # PAYMENTS | 24 |
| | TOTAL W & P | 51,285.68 |

| BEG BALANCE | PAY # | PAYMENT DUE DATE | SCH PMT | ACTUAL PAID | CHK# | DATE RECD | SCH PMT | ACTUAL PAID | CHK# | DATE RECD | SCH PMT | ACTUAL PAID | CHK# | DATE RECD | END BALANCE OWED | ENTER "1" IF LATE | 20% LATE FEE OWED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 51,285.68 | 1 | AT SIGNING | 11,467.81 | 11,467.81 | 1837 | 11/1/2018 | | | | | | | | | 39,817.87 | | |
| | | 11,467.81 | 11,467.81 | 11,467.81 | | | | | | | | | | | | | |
| | | AT SIGNING | 145.38 | 145.38 | 1837 | 11/1/2018 | | | | | | | | | | | |
| | | AT SIGNING | 127.20 | 127.20 | 1837 | 11/1/2018 | | | | | | | | | | | |
| | | AT SIGNING | 905.28 | 905.28 | 1837 | 11/1/2018 | | | | | | | | | | | |
| W & P | 1 | 2/1/18 | 811.95 | 811.95 | 1844 | 12/31/18 | 354.78 | 354.78 | 1844 | 12/31/18 | 969.34 | 969.34 | 1844 | 12/31/18 | 43,139.90 | | |
| | 2 | 3/1/18 | 811.95 | 811.95 | 1648 | 2/26/18 | 354.78 | 354.78 | 1648 | 2/26/18 | 969.34 | 969.34 | 1648 | 2/26/18 | 46,065.32 | | |
| | 3 | 4/1/18 | 811.95 | 811.95 | 1658 | 4/2/18 | 354.78 | 354.78 | 1658 | 4/2/18 | 969.34 | 969.34 | 1658 | 4/2/18 | 44,637.45 | | |
| | 4 | 5/1/18 | 811.95 | 811.95 | 1682 | 5/1/18 | 354.78 | 354.78 | 1682 | 5/1/18 | 969.34 | 969.34 | 1682 | 5/1/18 | 42,721.38 | | |
| | 5 | 6/1/18 | 811.95 | 811.95 | 1697 | 5/31/18 | 354.78 | 354.78 | 1697 | 5/31/18 | 969.34 | 969.34 | 1697 | 5/31/18 | 40,586.31 | | |
| | 6 | 7/1/18 | 811.95 | 811.95 | 1674 | 7/2/18 | 354.78 | 354.78 | 1674 | 7/2/18 | 969.34 | 969.34 | 1674 | 7/2/18 | 38,468.74 | | |
| | 7 | 8/1/2018 | 811.95 | 811.95 | 1827 | 7/20/2018 | 354.78 | 354.78 | 1827 | 7/20/2018 | 969.34 | 969.34 | 1877 | 7/20/2018 | 36,303.17 | | |
| | 8 | 9/1/2018 | 811.95 | 811.95 | 1827 | 8/21/2018 | 354.78 | 354.78 | 1827 | 8/21/2018 | 969.34 | 969.34 | 1872 | 8/21/2018 | 34,177.39 | | |
| | 9 | 10/1/2018 | 811.95 | 811.95 | 1890 | 10/1/2018 | 354.78 | 354.78 | 10/1/2018 | | 969.34 | 969.34 | 1827 | 10/1/2018 | 32,041.03 | | |
| | 10 | 11/1/2018 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 11 | 12/1/2018 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 12 | 1/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 13 | 2/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 14 | 3/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 15 | 4/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 16 | 5/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 17 | 6/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 18 | 7/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 19 | 8/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 20 | 9/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 21 | 10/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 22 | 11/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 23 | 12/1/2019 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| | 24 | 1/1/2020 | 811.95 | | | | 354.78 | | | | 969.34 | | | | 32,041.03 | | |
| TOTALS | 67,929.40 | | 21,245.42 | 23,681.23 | | | 8,514.72 | 3,190.02 | | | 23,264.16 | 8,724.06 | | | 32,041.03 | | |


EXHIBIT
F